**HARRY KLEIN PRODUCE CORP., Petitioner,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent.**

No. 26, Docket 87–4017.

United States Court of Appeals, Second Circuit.

Argued Sept. 2, 1987.

Decided Oct. 21, 1987.

Stephen P. McCarron, Silver Spring, Md. (Sures, Dondero & McCarron, Silver Spring, Md., of counsel), for petitioner.

Aaron Kahn, Atty., U.S. Dept. of Agr., Washington, D.C. (James Michael Kelly, Associate Gen. Counsel, Raymond W. Fullerton, Asst. Gen. Counsel, U.S. Dept. of Agr., Washington, D.C., of counsel), for respondent.

Before FEINBERG, Chief Judge, and PIERCE and ALTIMARI, Circuit Judges.

PIERCE, Circuit Judge:

Harry Klein Produce Corp. petitions for review of a decision and order of the Secre-

tary of the United States Department of Agriculture finding that it violated the accurate accounting and prompt payment provisions of Section 2(4) of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499b(4). It also challenges the determination that its license should be revoked as a sanction for the violations. Petition denied and enforcement ordered.

## BACKGROUND

Harry Klein Produce Corp. ("Klein") is a produce commission merchant licensed under the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. § 499a *et seq.* (1982 & Supp. III 1985), and doing business at the Hunts Point Market, in the Bronx, New York. Klein sells produce at wholesale on behalf of various growers and shippers. Some of the sales are made on consignment, while others are made for a joint account, that is, for a profit-sharing joint venture between the commission merchant and a shipper.

In 1984, following a complaint to the United States Department of Agriculture ("USDA") that Klein had failed to account properly for and to remit the proceeds from sales of vegetables that had been consigned to it, the USDA investigated Klein's accounting and payment procedures. In 1985, the USDA filed an administrative complaint against Klein for alleged violations of the accurate accounting and prompt payment provisions of Section 2(4) of the PACA, 7 U.S.C. § 499b(4).

Klein answered the complaint, and an evidentiary hearing was held before an Administrative Law Judge ("ALJ"). At the hearing, evidence was adduced that Klein maintained two sets of books relating to its sales of produce, one of which recorded actual sales volume and prices, while the other recorded the sales volume and prices reported to the shippers; and that out of 70 transactions randomly audited by the USDA, 57 showed discrepancies between actual and reported sales, with consequent improper payments to the shippers involved.

Also, there is record evidence from which the ALJ concluded that in order to make the sales figures more appealing to its shippers, Klein estimated the anticipated aggregate sale proceeds to be received from the sale of particular shipments of produce, and then constructed volume and sales figures for individual transactions that would correspond to the reported aggregates and that would make Klein appear to be a more effective seller than it really was. In so doing, the ALJ concluded, Klein falsified the quantities sold and the prices for which they were sold, failed to disclose produce dumped as unsalable, and falsified figures for produce damaged in repacking or returned or rejected by buyers.

Based upon this evidence, the ALJ reported that Klein had wilfully and repeatedly failed to comply with Section 2(4) of the PACA, 7 U.S.C. § 499b(4), and the regulations promulgated thereunder, 7 C.F.R. §§ 46.2(y)(1)–(2), (aa)(1), 46.29, and recommended that Klein's license be revoked. Klein appealed this decision to the Secretary of Agriculture (the "Secretary"), acting through the Judicial Officer, his designated agent with delegated authority. *See* 7 C.F.R. § 2.35. The Judicial Officer confirmed the findings of the ALJ and ordered the license revoked. Klein petitioned this Court for review of that decision pursuant to 28 U.S.C. § 2342 (1982).

No issue is raised in this case as to whether the Secretary's decision is supported by substantial evidence. Rather, Klein challenges the conclusion that it unlawfully falsified its accountings and instead urges us to find that there is a conflict between the prompt payment and accurate accounting regulations that renders simultaneous compliance impracticable. Klein asserts that in order to comply with the USDA requirement that sale proceeds be remitted to the shippers within ten days of the final sale of the produce, 7 C.F.R. § 46.2(aa)(1), it was forced to adjust the actual sales figures in order to reflect anticipated returns, rejections, and damages, as well as the risk of buyer non-payment. These items, Klein argues, which it was entitled to deduct from the payment remitted, were generally unknown at the time Klein was obliged to remit its payments; and it might take three to six weeks from

the date of sale before Klein received payment from its buyers and had complete information and documentation as to losses, offsets, and damages that it was entitled to deduct from the payment due.

Klein asserts that since, as a practical matter, it was unable to comply with the accurate accounting and prompt payment requirements simultaneously, it effectively was forced to choose which one to comply with, and that it therefore chose to make prompt payment. It claims to have based its remittances on its own estimations, calculated with reference to its forty years' experience in the industry, of the probable deductions and other credits that eventually would have to be offset against the anticipated sale proceeds.

Klein also challenges the license revocation on the grounds that the sanction is too severe. It claims that since it was "forced" into noncompliance with PACA, revocation is not warranted.

## DISCUSSION

■ The PACA is a remedial statute designed to ensure that commerce in agricultural commodities is conducted in an atmosphere of financial responsibility. *Finer Foods Sales Co. v. Block,* 708 F.2d 774, 782 (D.C.Cir.1983) (citing cases); *see Zwick v. Freeman,* 373 F.2d 110, 117 (2d Cir.), *cert. denied,* 389 U.S. 835, 88 S.Ct. 43, 19 L.Ed.2d 96 (1967). It is an intentionally rigorous law whose primary purpose is to exercise control over an industry "which is highly competitive, and in which the opportunities for sharp practices, irresponsible business conduct, and unfair methods are numerous." S.Rep. No. 2507, 84th Cong., 2d Sess. 3 (1956), *reprinting* H.Rep. No. 1196, 84th Cong., 1st Sess. (1955), *reprinted in* 1956 U.S.Code Cong. & Admin.News 3699, 3701, *quoted with approval in Wayne Cusimano, Inc. v. Block,* 692 F.2d 1025, 1028 n. 2 (5th Cir.1982).

The PACA requires all consignees and persons selling for a joint account, such as Klein, to remit "full payment promptly" to the shippers, which means that payment of the net proceeds or profits of the sale transactions must be made within ten days of the date of final sale of the produce. 7 C.F.R. § 46.2(aa)(1).[1] The PACA also requires these merchants "truly and correctly to account" for the disposition of all produce sent by a shipper and for the proceeds or profits of all sales. 7 U.S.C. § 499b(4).

In this connection, the USDA has established by regulation a detailed set of recordkeeping and disclosure requirements designed to ensure that a consignee maintains complete and accurate records of its transactions and that shippers obtain the payments to which they are entitled. In particular, a seller such as Klein is required to specify in its accounting to its shippers the date of final sale of the produce, the quantities of goods sold and the prices for which they were sold, the disposition of produce other than by sale, and the expenses properly chargeable as offsets to the sale proceeds. 7 C.F.R. §§ 46.2(y)(1)–(2). The consignee's own records must also contain specific information regarding goods returned or rejected by a buyer, goods dumped as commercially worthless, and regarding other allowable expenses. *Id.* §§ 46.21–.22, .29.

In this context, Klein's assertion that it was entitled to estimate, based on prior experience, the likelihood and magnitude of returned and rejected produce, and to falsify the quantities of goods sold and dumped, is unpersuasive. Even if the rules were in conflict, as Klein asserts, there would be no warrant for countenancing Klein's intentionally inaccurate filings in light of the meticulous standards imposed by the regulations.

On the facts presented we find there to be no cognizable conflict between the regulation requiring payment within ten days of the final sale, *id.* § 46.2(aa)(1), and the one

---

**1.** Effective November 20, 1984, the definition of "full payment promptly" in 7 C.F.R. § 46.2(aa)(1) was amended to require payment by the sooner of ten days from the date of final sale or twenty days from the date of acceptance of a shipment. We take no position on the effect of this amendment on the regulatory scheme, but note that it does not affect our analysis of Klein's conduct in this case. *See* 49 Fed.Reg. 45,735, 45,739 (1984) ("These changes will not change the current administration of the program in significant ways....").

requiring an accurate accounting, *id.* §§ 46.2(y)(1)–(2). There is no doubt that, under one possible reading of the regulations, Klein could have remitted within the allowed period the sale proceeds that it expected to receive if all buyers paid in full and if there were no subsequent returns or other credits. Thereafter, Klein would have been left to seek reimbursement from its shippers for any such allowances as they occurred. *See S.H. Becker Co. v. Morris Okun, Inc.,* 18 Agric.Dec. 300, 304–07 (1959) (consignee may recover money remitted to shipper in event of buyer nonpayment).

The USDA contended both in its brief and at oral argument that the Secretary has adopted a policy of requiring a consignee to remit proceeds within the prompt payment period only to the extent that it had actually received payment, total or partial, from its buyers, with subsequent remittances to be made as additional payments are received. If indeed there were such an official interpretation of the regulations, we would accord it substantial deference. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). However, we can find no record verification that such a policy exists.[2]

Well-established principles of administrative law require no deference to administrative interpretations presented for the first time in appellate litigation. *See Ames v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 567 F.2d 1174, 1177 n. 3 (2d Cir.1977) (citing cases); *see also National Ass'n of Greeting Card Pub. v. United States Postal Serv.,* 569 F.2d 570, 600 (D.C.Cir.1976) (per curiam) (agency interpretation not necessarily entitled to deference when "offered in the wake of litigation which turns on those very regulations"), *vacated on other grounds sub nom. United States Postal Serv. v. Associated Third Class Mail Users,* 434 U.S. 884, 98 S.Ct. 253, 54 L.Ed.2d 169 (1977). One proper procedure

for an agency to follow in interpreting one of its governing statutes or regulations is to proceed via the rule-making process of the Administrative Procedure Act, 5 U.S.C. §§ 552–553. This procedure is not exclusive, however, and an agency may also use its adjudicatory proceedings to fashion applicable rule interpretations. *See NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 292–94, 94 S.Ct. 1757, 1770–71, 40 L.Ed.2d 134 (1974). We conclude from our reading of *Ames, National Ass'n of Greeting Card Pub.,* and *Bell Aerospace* that, in this latter event, it is appropriate for the agency to present its argument early on in its own adjudicatory proceedings and not during appellate review, as here.

However, it is not necessary for us to decide which of the two interpretations of the PACA is correct: the one which requires payment of proceeds even if not yet collected from the buyers or the one which requires payment only to the extent of money collected. That determination is best left for the USDA to make under the methods described above. For the purposes of this case, it is clear that under neither view of the applicable statute and regulations was Klein expected to report incorrect sale prices, or to report sale transactions that never occurred, or to fail to report dumping of merchandise, or to speculate about the quantity of returns and the amount of other credits, or otherwise to report data incorrectly when accounting to its shippers.

 As for the challenge to the sanction imposed, the determination of a sanction will not be upset on appeal unless it is found to be " 'unwarranted in law ... or without justification in fact ....' " *Magic Valley Potato Shippers, Inc. v. Secretary,* 702 F.2d 840, 842 (9th Cir.1983) (per curiam) (quoting *Butz v. Glover Livestock Comm'n Co.,* 411 U.S. 182, 185–86, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 (1973)); *see also Chalfy v. Turoff,* 804 F.2d 20, 22 (2d Cir. 1986) (per curiam) ("Administrative agencies have broad discretion to fashion appro-

---

**2.** The USDA cited two cases in support of this proposition: *Maulhardt v. H.I. Baernstein & Co.,* 19 Agric.Dec. 874 (1960), and *S.H. Becker Co. v. Morris Okun, Inc.,* 18 Agric.Dec. 300 (1959). We do not find either of them to support the pro-

posed construction, since they only address the question of which party bears the ultimate risk of loss or nonpayment, and not the question of whether payment must be made before proceeds are received.

priate sanctions...."). There was substantial evidence to support the findings made by the ALJ and the Judicial Officer. The record and the applicable law support the revocation, particularly because PACA does not require uniformity of sanctions for similar violations. *American Fruit Purveyors, Inc. v. United States*, 630 F.2d 370, 374 (5th Cir.1980) (per curiam) (citing *Butz*, 411 U.S. at 186, 93 S.Ct. at 1458). In view of the remedial purpose of the statute and the flagrant and repeated nature of Klein's violations, we cannot say that the Secretary was unjustified in revoking Klein's license pursuant to Section 8(a) of the PACA, 7 U.S.C. § 499h(a). *See Wayne Cusimano, Inc.*, 692 F.2d at 1029–30 (revocation proper sanction for $135,000 underpayment over nine month period).

The petition is denied and we direct enforcement of the order.