**Joan L. STEPHENS, Plaintiff,**

v.

**Edward DERWINSKI, Secretary of the Department of Veteran Affairs et al., Defendants.**

**Civ. A. No. 91–0441.**

United States District Court,
District of Columbia.

May 4, 1992.

Martin Cohen, Mark Roth, American Federation of Government Employees, AFL–CIO, Bala Cynwyd, Pa., for plaintiff.

Douglas Wickham, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

This case comes before the Court on Plaintiff's and Defendants' cross motions for summary judgment and Defendants' motion to dismiss for lack of subject matter jurisdiction. See Fed.R.Civ.P. 56, 12(b)(5). Plaintiff, a nurse who has worked for the Department of Veterans Affairs ("Department") for ten years, challenges the Defendants' decision to terminate her. This Court has reviewed the administrative record in the case and held a hearing on these motions on April 29, 1992. Based on the record, this Court cannot sustain the Department's decision in this case. Therefore this Court remands this matter to the Secretary for further consideration consistent with this opinion.

### ANALYSIS

█ Plaintiff has alleged that the Department violated her statutory rights and her rights under the first amendment and the fifth amendment of the Constitution. Absent express statutory preclusion or exclusive commission to the discretion of the agency, agency action is reviewable under the Administrative Procedure Act. 5 U.S.C. § 701 et seq. See Webster v. Doe, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988); see e.g., Heaney v. U.S. Veterans Administration, 756 F.2d 1215 (5th Cir.1985). Thus, this Court has jurisdiction to review the Defendants' decision to fire the Plaintiff, Nurse Joan Stephens.

This Court is mindful, however, of its limited role in conducting such a review. The Court may only set aside agency action if it finds that the Department acted in an arbitrary and capricious manner or, in reviewing the record, the Court finds that the decision of the agency was unsupported by substantial evidence. See Doe v. Hampton, 566 F.2d 265, 271–272 (D.C.Cir.1977). Even by that standard, however, this Court has grave concerns that this case may not have received all the scrutiny it deserved.

The Plaintiff in this case has worked as a nurse for the Department of Veterans Affairs for ten years. She had never been the subject of disciplinary action before the event at issue in this case. Her discharge was based upon her role in an investigation in which it was discovered that a patient on her ward was held and beaten by two of the assistant nurses after he had escaped from his area of confinement. Plaintiff has never disputed that the patient was, in fact, beaten by one of the assistant nurses.

Plaintiff's discharge was based upon two adverse findings of a Disciplinary Board ("Board") assembled to investigate her conduct in the wake of the alleged abuse. A.R. at 14–25. The findings of the Board were summarily adopted by the Chief Medical Director and the Secretary. A.R. at 1, 13. First, the Board found that Stephens had tried to "minimize" the severity of the abuse following the incident. A.R. at 14. Second, the Board found that Stephens had failed to disclose that Ward Clerk Judy Miller had reported the incident of abuse to her, in effect hindering the investigation into the abuse. *Id.* Stephens claimed that such a conversation never took place. The Board refused, however, to base its finding on a similar alleged report from Nurse Joan Crider, finding that Stephens "may not have heard Nurse Crider's verbal report." *Id.* Therefore, the second adverse finding rested entirely on the fact that Stephens had not disclosed the fact that Judy Miller had made a report to her.

These adverse findings are of grave concern to this Court. The finding that Stephens failed to report Miller's conversation with her is based solely on testimony by Ms. Miller that she told Stephens about the incident. The record indicates, however, that Miller made no statement at all concerning her alleged report until five months after the incident occurred. A.R. 160–165. When she finally made that statement she indicated that it was Wanda Keesee, not Joan Stephens, to whom she reported the incident. *See id;* A.R. 763–

764. Even after initially being informed that Keesee's time card indicated that Keesee was not on duty that day, Miller persisted in her testimony that it was Keesee to whom she reported. A.R. 764. It was only after Stephens herself told Miller that Keesee had been out of the office that day and that she, Stephens, had been the acting Charge Nurse that Miller changed her testimony to indicate it was Stephens to whom she reported the incident. *See* A.R. at 651–652. *See also* A.R. at 764, 160–165, 180–181, 795. Thus, it was Stephen's own statement to Miller that caused Miller to change her testimony, and it was that change in testimony which the Board relied upon to sustain the finding that Stephens had lied.

It is true that the Board's finding in this regard ultimately involved a determination as to credibility and that determination is due great deference. However, to fire a ten-year employee based upon the equivocal testimony of only one other person strains such deference beyond its limits. This is even more so in light of the fact that it was Stephen's own report which led to the investigation and discovery of the patient abuse in this case. *See* A.R. at 725. Stephens filed a report on the day of the incident stating:

> It was reported to me by patient [W] that he observed one of the NA's strike pt. [P] as he was being escorted back to 35A.
>
> When pt. [P] was questioned concerning the alleged abuse pt. *stated that everyone beat him up including black and white males and females.* When asked again what happened pt. stated he weighed 133 pounds. Pt. pointed to a healing scratch on his forehead as evidence of injury. No edema, redness or bruising noted.[1]

*Id.* (emphasis added). Thus, Stephens clearly included statements in her report which led to further investigation regarding the abuse. While Stephens has consist-

---

1. The examining physician confirmed there was "no evidence of recent bruises or lacerations." A.R. at 725.

ently maintained that she only saw a "tap" on the head of the patient, she also admits that she was over 100 feet away from the incident and included in her report the damaging statements of others. Therefore, Stephens did not "minimize" the incident, at most she minimized what she herself was able to see.

Had Stephens not filed that initial report there may well have been no investigation, much less one which uncovered the testimony of Nurse Crider and Ward Clerk Miller. Stephens, in effect, got the ball rolling. It seems self-defeating to let that same ball come back to crush Stephens based only on the testimony of Miller, who did not come forward with any official statement at all for five months.

The sanction of firing Nurse Stephens, based upon the record before the Court, simply fails the 'Doesn't add up' test. The sanction is particularly harsh considering that the nursing assistant, Rex Knisley, who physically aided in the alleged abuse by holding the patient and blatantly lied about it to the disciplinary board, only received a 14–day suspension. Although the Court understands that some extra responsibility is due to Nurse Stephens because she was the Charge Nurse, the punishment in this case seems wholly disproportionate to the findings against the Plaintiff.

Left with such an inexplicably harsh sanction, the Court reviewed the record to see if there were any other possible factors that might explain the extreme sanction imposed. The administrative record shows that Nurse Stephens, who is a union vice-president and was an active union organizer at the time of this incident, may well have been someone management was desirous of terminating for her union activities. A.R. at 554–558. Dr. Gary Evans, a clinical psychologist on Nurse Stephens' ward testified that several months before the incident in this case, he was told to investigate Nurse Stephens with regard to another matter. After his report exonerated her conduct, he testified that he was pressured to change his conclusions and was told by a senior personnel officer, "You don't understand. We are going to fire Nurse Ste-phens and we need these results." A.R. at 557. Thus, there may be other reasons for the sanction imposed on Nurse Stephens which should be thoroughly explored.

Based upon its review of the record, this Court finds that Department's action in terminating Nurse Stephens was arbitrary and capricious and its decision was not supported by substantial evidence in the record. Therefore, this Court will reverse the decision which the Department made concerning Nurse Stephens and will remand this case to the Secretary for a complete review of the record consistent with this opinion.