**William J. WARD, Plaintiff,**

v.

**Edward DERWINSKI, Secretary of Veterans Affairs, et al., Defendants.**

No. 92–CV–6346L.

United States District Court, W.D. New York.

Dec. 22, 1992.

---

Mark D. Roth, American Federation of Government Employees, Washington, DC, for plaintiff.

James Robert Layton, U.S. Attys. Office, Washington, DC, Brian M. McCarthy, Asst. U.S. Atty., Rochester, NY, for defendants.

## DECISION AND ORDER

LARIMER, District Judge.

This action arises from disciplinary action taken by the Department of Medicine and Surgery ("DM & S") of the Department of Veterans Affairs ("VA"), against plaintiff, William J. Ward, a nurse employed by the VA. Ward was fired after he was found to have mistreated a psychiatric patient under his care.

Before the Court are defendants' motion to dismiss or, in the alternative, for summary judgment, and plaintiff's cross-motion for summary judgment.[1] For the reasons that follow, the parties cross-motions for summary judgment are granted in part and denied in part. The decision of the Secretary of VA ("the Secretary") is vacated insofar as it imposes a penalty of discharge and remanded for reconsideration of the penalty, consistent with this decision.

### FACTUAL BACKGROUND

On March 31, 1989, plaintiff was assigned to work as a registered nurse on hospital ward 37–B ("ward 37–B") at the Veterans Administration Medical Center in Canandaigua, New York ("VACNY"). Ward 37–B housed approximately fifty male patients, averaging 48 years in age, who were hospitalized for chronic conditions, most of which were psychiatric in nature.

Plaintiff began working as a registered nurse at VACNY on December 14, 1981. By March of 1989, plaintiff had experience in dealing with psychiatric patients, had never been subjected to disciplinary action and was an active leader of the American Federation of Government Employees ("AFGE"), the employee labor union at VACNY.

Sometime during the morning of March 31, 1989, plaintiff spoke with patient W.J.[2] in ward 37–B's day room. W.J. is a paranoid schizophrenic with a history of hallucinations and unprovoked attacks on others. On that particular morning, W.J. was in an enclosed chair, with his head down in front of him, resting on the chair's tray. According to plaintiff, he approached W.J. and called his name twice. W.J. did not respond. Plaintiff observed that W.J. was giggling, speaking to himself and smiling, and he believed that W.J. was hallucinating.

In an attempt to break through the hallucination, plaintiff said that he patted W.J. on the shoulder and asked him how he was that day. W.J. smiled and responded, "Not good." Plaintiff then asked W.J. "if he felt like fighting or hitting." W.J. smiled and said, "Yes."

Apparently, it was common for the medical staff to question W.J. about fighting. Occasionally W.J. could tell a nurse whether or not he was about to become assaultive and appropriate action could be taken when such advance warning was given.

---

1. It is well established that "a post-answer Rule 12(b)(6) motion is untimely and some other vehicle, such as a motion for judgment on the pleadings or for summary judgment, must be used to challenge the failure to state a claim for relief." Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1357 at 300–301 (1990) (cases cited). Since defendants answered the complaint on December 5, 1991, and since I am considering matters outside the pleadings, I will treat defendants motion as one for summary judgment.

2. The patient's initials are used to protect the patient's identity.

After this exchange, plaintiff asked W.J. if he wanted medication. W.J. said, "Yes." W.J. had a prescription for Haladol which was to be given on an "as needed" basis. This medication prevented W.J. from becoming assaultive. When W.J. responded that he wanted the medication, plaintiff prepared the shot and administered the dosage. According to plaintiff, that was the extent of his contact with W.J. that morning.

Approximately two weeks later, on April 12, 1989, written incident reports were filed against plaintiff by Valerie Singleton and Mary Ann Houser, two nurse assistants on duty on March 31, 1989, and Barbara Jones, R.N., plaintiff's supervisor. The incident reports alleged that plaintiff had abused patient W.J., as well as two other patients, G.B. and E.S., on March 31, 1989.

Jones had not seen the alleged acts of patient abuse on either W.J. or G.B., but did witness plaintiff's actions with respect to E.S. Singleton and Houser were in ward-37B's day room on March 31, 1989 and they both claimed to have witnessed the act of patient abuse with respect to W.J. They contend that plaintiff approached W.J. and asked him if he wanted to fight. When W.J. did not respond, plaintiff continued "taunting" W.J. and at one point, according to Singleton and Houser, threatened to put W.J. in restraints, put him in a separate room, and "let the other patients at him."

Singleton and Houser maintained that this exchange occurred for approximately five minutes and that W.J. was unresponsive for the entire time. Singleton and Houser told Jones about the incident, and she suggested that they write memos to the Medical Director to initiate patient-abuse charges against plaintiff[3].

An administrative investigation was undertaken to substantiate the patient abuse charges. The investigation was commenced on April 21, 1989 and completed on July 7, 1989 by a three member panel. The panel included the Chief of Pharmacy Service, a social worker, and a nurse. Nine employees were interviewed and their statements were recorded. Only Singleton and Houser testified regarding the alleged abuse of W.J.

Upon completing their investigation, the panel determined that the charges of patient abuse with respect to all three patients had been substantiated and recommended that plaintiff be discharged. The Associate Deputy Medical Director of the VA approved the panel's findings and the proposed sanction.

A letter of proposed discharge under 38 U.S.C. § 4110 was sent to plaintiff on September 15, 1989. Exercising his rights under 38 U.S.C. § 4110, plaintiff requested a hearing before a DM & S Disciplinary Board ("the Board").

For two days beginning on March 19, 1990, the Board met and heard evidence from plaintiff, Singleton, Houser and other witnesses concerning the three alleged incidents of patient abuse. The Board determined that the charges of patient abuse against patients G.B. and E.S. were not sustained, but that the charges of abuse against W.J. were sustained. Discharge was once again recommended as the penalty.

The Chief Medical Director of the VA accepted the Board's decision and recommended that plaintiff be discharged for the violation. Plaintiff appealed the Chief Medical Director's decision to the Secretary and on November 29, 1991, the Secretary sustained the Medical Director's decision.

### PROCEDURAL BACKGROUND

This action was commenced in Federal District Court for the District of Columbia on April 26, 1991. In his amended complaint plaintiff claimed that the decision of the Secretary, in accepting the recommendation of the Board, was arbitrary and capricious and not supported by substantial evidence. He sought review of the decision under the Ad-

---

**3.** The record indicates that earlier that day, Singleton and Houser were reprimanded by plaintiff for smoking in the patient's shower room and leaving a suicidal patient unattended to shave with a razor, both violations of VACNY policy. Further, the record shows that plaintiff, in his capacity as a union officer, filed several grievances against Jones for unfair labor practices and that Jones was aware that plaintiff and his wife, a friend of Jones', were having marital difficulties and were in the process of getting a divorce.

ministrative Procedure Act ("APA"), 5 U.S.C. § 706.

In addition, plaintiff claimed that his Fifth Amendment rights were violated because the decision to terminate him for this particular offense was not in keeping with the VA's policy of "like penalties for like offenses." He claimed that other registered nurses received less severe penalties for conduct which was much more egregious than the conduct for which he was terminated. Further, plaintiff claimed that his First Amendment rights were violated because he was discharged in retaliation for his past participation in union activities.

The parties originally filed their cross-motions before Judge Gerhard Gesell in the District of Columbia. Judge Gesell did not rule on the merits but transferred the case to the Western District of New York, the district within which the VA Medical Center at Canandaigua is located. The parties renewed their motions before me and, at the Court's direction, both sides have submitted additional papers in support of their respective motions.

## DISCUSSION

### Review of Administrative Decision

*A. Jurisdiction*

■ The Secretary claims that this Court has no jurisdiction to review the disciplinary action against plaintiff. The Secretary argues that the statutory provisions which outline the requirements and procedures for DM & S disciplinary boards, 38 U.S.C. § 4110[4], does not include a provision for judicial review. 38 U.S.C. § 4110 states in part:

> A disciplinary board ... shall recommend to the Administrator [now the Secretary] suitable disciplinary action ... The Administrator shall either approve ... or disapprove such recommendation.... The decision of the Administrator shall be final.

It is based on the sentence, "[t]he decision of the Administrator shall be final," that the Secretary argues that this Court does not

have jurisdiction to review the Board's decision with respect to plaintiff's discharge.

In addition, the Secretary relies on several cases which held that Congress intended the disciplinary procedures enumerated in § 4110 to be "exclusive". *See Colorado Nurses Ass'n v. Fed. Labor Relations Auth.,* 851 F.2d 1486 (D.C.Cir.1988); *Veterans Admin. Medical Ctr., Northport v. Federal Labor Relations Auth.,* 732 F.2d 1128 (2d Cir. 1984); *Veterans Admin. Medical Ctr., Minneapolis v. Federal Labor Relations Auth.,* 705 F.2d 953 (8th Cir.1983).

These cases, however, do not stand for the proposition that judicial review of personnel disciplinary actions, conducted pursuant to the procedures outlined in 38 U.S.C. § 4110, is precluded. None of the cited cases hold that there is no judicial review for disciplinary actions taken under § 4110. In the cases cited by the Secretary, plaintiffs sought to impose additional procedures on the VA or to require that the VA engage in collective bargaining with its nurses.

Here, plaintiff was disciplined according to the procedures of § 4110 and received a final decision from the Secretary with respect to the charge of verbal patient abuse. Plaintiff now seeks to have this Court review that final decision, specifically because he claims that the decision was arbitrary and capricious.

Once a final decision has been obtained from an agency, an aggrieved person has a right to challenge that decision in federal court pursuant to APA §§ 701–706. *Suffolk v. Long Island Lighting Co.,* 728 F.2d 52, 64 (2d Cir.1984). Under § 706, the reviewing court shall "hold unlawful and set aside agency action, findings and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ..." 5 U.S.C. § 706(2)(A).

■ Generally, judicial review of an agency's final action is the rule and not the exception. *Barlow v. Collins,* 397 U.S. 159, 166–67, 90 S.Ct. 832, 837–38, 25 L.Ed.2d 192 (1970). Judicial review will be barred *only if*

---

**4.** Subsequent to the administrative proceedings in this case, the statutory provisions relating to

disciplinary boards were amended and recodified at 38 U.S.C. § 7462 et seq.

it is eliminated by statute or by clear and convincing evidence of legislative intent to preclude such review. *Block v. Community Nutrition Inst.*, 467 U.S. 340, 345, 104 S.Ct. 2450, 2453, 81 L.Ed.2d 270 (1984); *Abbott Labs. v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967); *Citizens Comm. for Hudson Valley v. Volpe*, 425 F.2d 97, 101–02 (2d Cir.), *cert. denied*, 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1970).

The Secretary has failed to make such a showing. A review of the legislative history of the Veterans Benefits' Act of 1946[5] shows that Congress intended to give the Secretary considerable freedom in administering personnel matters pertaining to employees of DM & S. Further, it is clear that Congress intended that DM & S personnel rely on the procedures in § 4110 to obtain a final decision from the agency.

But nothing in the legislative history of the 1946 Act suggests that Congress intended to preclude judicial review of the Secretary's final decisions. There is no reason why the provisions of the APA concerning review of final agency decisions should not apply here as well.

The Secretary argues that Congress' recent amendments to the 1946 Act, codified at 38 U.S.C. § 7642 et seq., which contain explicit provisions for judicial review, are evidence that judicial review under § 4110 was not previously available. The Secretary maintains that if judicial review were previously available, this statute would be meaningless. I disagree.

Congress could have just as easily been codifying what it believed to be the present state of the law, as well as developing new procedures which it felt were lacking in the old law. In addition, in determining legislative intent, it is the language of § 4110 and the intent of the Congress which passed it which is relevant, not § 7642 and the intent of the Congress that passed the recent amendments. *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979); *New York City Health & Hosps. Corp. v. Perales*, 954 F.2d 854 (2d Cir.), *cert.*

*denied*, —— U.S. ——, 113 S.Ct. 461, 121 L.Ed.2d 369 (1992). There is no evidence that § 4110 in the original 1946 Act was intended to preclude judicial review.

Several courts which have dealt with the precise issue of judicial review of § 4110 decisions, have also held that judicial review of disciplinary decisions conducted under § 4110 is not precluded by the language or legislative history of § 4110. *See Bellomo v. Derwinski*, 1992 WL 205639 (D.D.C. Aug. 7, 1992); *Stephens v. Derwinski*, 790 F.Supp. 29 (D.D.C.1992).

In addition, several courts have engaged in judicial review of disciplinary decisions under § 4110 without discussing jurisdiction, thereby implicitly holding that courts do have jurisdiction over these claims. *See Balderman v. United States Veterans Admin.*, 870 F.2d 57 (2d Cir.1989); *Daly–Murphy v. Winston*, 837 F.2d 348 (9th Cir.1987); *Heaney v. United States Veterans Admin.*, 756 F.2d 1215 (5th Cir.1985); *Moore v. Custis*, 736 F.2d 1260 (8th Cir.1984); *Gilbert v. Johnson*, 601 F.2d 761 (5th Cir.1979), *cert. denied*, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980).

I, therefore, hold that I have jurisdiction to review the Secretary's final disciplinary decision with respect to the discharge of plaintiff. The Secretary has not met his burden of demonstrating by clear and convincing evidence that Congress, in passing the 1946 Act, intended to preclude judicial review.

### B. Standard of Review

The appropriate standard of review under 5 U.S.C. § 706(2)(A) is whether the agency's decision is arbitrary and capricious. Under an arbitrary and capricious standard of review only clear errors of judgment may be set aside. *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974).

A court's inquiry into the facts is limited to finding that an "agency has articulated a rational connection between the facts found

---

**5.** S.Rep. No. 858, 79th Cong., 1st Sess. (1945), reprinted in 1945 U.S.C.C.A.N. 956 (sometimes "1946 Act").

and the choice made." *Hudson Transit Lines, Inc. v. United States Interstate Commerce Comm'n,* 765 F.2d 329, 336 (2d Cir. 1985) (citation omitted). In sum, under an arbitrary and capricious standard a court may not substitute its judgment for that of the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); *Falk v. Secretary of the Army,* 870 F.2d 941, 945 (2d Cir.1989).

At issue in this case are two separate agency decisions. First, the Secretary's finding that plaintiff's conduct with respect to W.J. constituted patient abuse and second, the Secretary's decision to impose discharge as the penalty. Plaintiff claims that both decisions are arbitrary and capricious.

### 1. *Patient Abuse*

■ Plaintiff claims that the Secretary's decision with respect to the issue of patient abuse was arbitrary and capricious for several reasons. First, he claims that the VA did not properly investigate the charge that he verbally abused patient W.J. Second, plaintiff claims that he was not allowed to review the medical records of W.J. and to introduce them into evidence in order to show that W.J. was prone to sudden and violent acts. Third, the Board heard testimony and ruled on the propriety of giving W.J. medication assigned to him on an "as needed" basis, although plaintiff was not charged with that matter. Finally, plaintiff claims that the Board automatically repudiated the testimony of plaintiff merely because he was the individual charged.

Although it is a close call, I find that the Secretary's decision that plaintiff's conduct constituted patient abuse was not·arbitrary and capricious. The record indicates that the charge of verbal patient abuse was properly investigated. The VACNY Medical Director authorized an investigation on April 21, 1989 which was completed on July 7, 1989. (AR [6] 857). Nine employees of VACNY were interviewed under oath. (AR 4). Their testimony was transcribed and made available to plaintiff prior to his hearing before the Board. In addition, the Head Nurse of ward 37–B attempted to interview the three patients involved and obtained a written statement from one [7]. Further, plaintiff was free to call any of those witnesses and he entered most of his own personnel file on the record before the Board in order to prove that this was the first time that he had been accused of mistreating a patient under his care.

Although plaintiff was not allowed to review W.J.'s medical records or to introduce them into evidence, W.J.'s history of sudden and violent attacks was introduced through the testimony of several witnesses. Indeed, at one point during the Board hearing it was stipulated that W.J. was "assaultive, combative, [and] strikes out." (AR 505).

Further, the testimony which the Board heard regarding the impropriety of the medication given to W.J. does not provide a basis for holding that the Secretary's decision was arbitrary and capricious. Such testimony was heard in the context of the events as they transpired and the Board made no finding as to the propriety of medicating W.J.

Finally, plaintiff's charge that the Board automatically repudiated his testimony because he was the individual charged is pure speculation. There is no evidence in the record to support plaintiff's claim that his testimony was "automatically" rejected. In fact, the Board believed at least his account of the events with respect to patients G.B. and E.S. because they ultimately determined that those charges were not sustained.

The fact that the Board accepted some testimony against plaintiff concerning W.J. is not subject to review here. This Court cannot overrule a credibility determination made by those who actually heard the testimony. *Breeden v. Weinberger,* 493 F.2d 1002, 1010 (4th Cir.1974). *See also Borsari v. Federal Aviation Admin.,* 699 F.2d 106, 109 (2d Cir.), *cert. denied,* 464 U.S. 833, 104 S.Ct. 115, 78 L.Ed.2d 115 (1983) ("deference traditionally

---

**6.** "AR" signifies the administrative record before the VA.

**7.** W.J. and G.B. were found to be unable to give statements due to their psychiatric condition. (AR 4).

afforded to the determinations of presiding officials when questions of credibility are involved").

### 2. *Secretary's Penalty*

■ Generally, when · an agency determines that a violation has occurred, the choice of a penalty is largely within the agency's discretion. *Merritt v. United States,* 960 F.2d 15, 17 (2d Cir.1992). It will not be upset on review unless it is deemed to be arbitrary and capricious. *De La Nueces v. United States,* 778 F.Supp. 191, 195 (S.D.N.Y.1991). An agency's imposition of a penalty is deemed to be arbitrary and capricious if it is found to be "unwarranted in law ... or without justification in fact...." *Harry Klein Produce Corp. v. United States Dep't of Agric.,* 831 F.2d 403, 406 (2d Cir. 1987).

Plaintiff claims that the penalty imposed on him for one instance of verbal patient abuse was not consistent with the penalties imposed by VACNY for other acts of verbal or physical patient abuse. He maintains that it is the policy of the VA to give "like penalties for like offenses." The Secretary claims that there is no such policy and that plaintiff's discharge was not arbitrary and capricious because it was within the range of permissible penalties for such an offense.

Plaintiff concedes that discharge is one of the permissible penalties provided by law. It is one of the penalties available to the Secretary for disciplining employees when charges are sustained. 38 U.S.C. § 4110(d). The thrust of plaintiff's argument is that given the modest nature of the "abuse" involved, the penalty of discharge was too severe.

■ Generally, an agency's penalty is not rendered invalid, however, solely because it is more severe than penalties imposed in other cases. *Butz v. Glover Livestock Comm'n. Co.,* 411 U.S. 182, 187, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 (1973). But the presence of regulations and guidelines requiring uniformity or constraining the agency's imposition of penalties, may render the imposition of a dissimilar penalty unjustifia-

ble in fact. *See De La Nueces,* 778 F.Supp. at 196 (the absence of regulations or guidelines constraining an agency in the imposition of a penalty prevented the court from holding that the severe penalty was arbitrary and capricious); *Harry Klein Produce,* 831 F.2d at 407 (the absence of a requirement that penalties be uniform prevented a holding that the severe penalty was arbitrary and capricious). *Cf. Lawrence v. United States,* 693 F.2d 274 (2d Cir.1982) (scrutinizing agency's regulations to determine if sanction was in violation); *Willy's Grocery v. United States,* 656 F.2d 24 (2d Cir.1981), cert. denied, 454 U.S. 1148, 102 S.Ct. 1011, 71 L.Ed.2d 301 (1982) (an agency's sanction upheld when it properly applied its own guidelines and regulations); *Ruszczyk v. Secretary United States Dep't of Agric.,* 662 F.Supp. 295 (W.D.N.Y.1986) (examining agency's regulations and applying them to the facts to determine if a sanction was unduly harsh).

Here, it is clear that the VA does have a written policy of penalizing employees in proportion to the character of the offense and treating similar offenses with similar penalties. This policy can be found in the *VA Manual*[8]. The manual states, "[w]here a disciplinary action or adverse action is required ... the employee will not be penalized out of proportion to the character of his offense." *VA Manual,* Chapter 752(2)(a). "In taking [actions covered in this chapter], like penalties should be imposed for like offenses." *VA Manual,* Chapter 752(2)(b).

Appendix C of the *VA Manual*[9] contains a table of ranges of penalties for stated offenses and lists the minimum penalty for a first time offense of patient abuse as a reprimand. The maximum offense is removal. The instructions for the use of the table of penalties states that it is to help assure "that like disciplinary [sic] action is taken for like offenses." *VA Manual,* Chapter 752 App. C at 1.

Even though discharge is a permissible sanction, the *VA Manual* recommends that the penalties administered be progressively severe *before* removal action is initiated, "un-

---

**8.** *VA Manual,* MP–5, Part I Chapter 752: Discipline and Adverse Actions (August 2, 1971).

**9.** *VA Manual,* MP–5, Part I Chapter 752 (August 2, 1971).

less the offense is so serious that it warrants removal action." *VA Manual,* Chapter 752 App. C at 3(f). There is no evidence that plaintiff's one instance of verbal taunting was "so serious" as to warrant removal, especially when the record contains numerous instances of conduct by others that was much more severe in nature but did not result in the ultimate penalty of discharge.

For example, one nurse inflated the retaining balloon on an abdominal feeding tube, contrary to policy and procedures, in order to facilitate its removal. The balloon burst and blew a hole in the patients jejunum and eventually led to the patient's death. No disciplinary action was taken against this nurse. (AR 870-71).

Another nurse was attacked by a psychiatric patient while on duty. The nurse "helped the patient regain his self-control" by use of several wrestling techniques, which necessitated holding one of the patient's hands between his legs until help arrived. Physical abuse charges were brought against this nurse and he received a fourteen day suspension. *See Bellomo v. Derwinski, supra.*

Another nurse was in charge of a patient who was then in his late fifties or early sixties and who breathed through the use of a tracheotomy. After the nurse had given the patient some oral medication, the patient threw the remaining water from his cup onto the floor. The nurse yelled at the patient and then "struck a forceful, side-arm blow to the back of his head with a hard, rubber-soled slipper," producing an audible sound which was described as a "real hard slap." No disciplinary action was taken against this nurse for that incident [10].

Several months later, this same nurse twisted a patient's arm behind his back, lowered him to the floor, choked him, placed her hand over his mouth applying pressure to his jaw and forcing his head backwards, in an attempt to control the patient. Once again no disciplinary charges were brought against that nurse.

Another nurse was giving a seventy five year old partially paralyzed patient milk of magnesia when the patient spat the medication at her. The nurse, in an "instinctive reflex action," threw a milkshake in the patient's face. She was suspended for one day [11].

In another case, a nursing assistant held down a patient while two other nursing assistants beat him for attempting to escape his area of confinement. This assistant also hindered the investigation of the incident by lying about his involvement. He received a fourteen day suspension. *See Stephens,* 790 F.Supp. at 31.

Even more troubling is the indication in the record that plaintiff is the *only* professional nurse disciplined for patient abuse who received the penalty of discharge in the thirty year history of VACNY. (AR 871).

Plaintiff's discharge "simply fails the 'Doesn't add up' test." *Stephens,* 790 F.Supp. at 31. On this record it is clear, that when compared to the penalties imposed for other instances of verbal and physical patient abuse, plaintiff's penalty is not consistent with VA policy, is extraordinarily severe, and, therefore, arbitrary and capricious. On this record, the termination of an experienced nurse, found to have committed only one instance of verbal patient abuse, is unjustified in fact.

The record indicates that the Secretary was aware of the ALJ's decision, but refused to take it into consideration when affirming the Board's decision. Since the VA guidelines state that like penalties should be imposed for like offenses, and since the Secretary had the information before him before he made his final decision, I have taken the ALJ's factual findings into consideration in order to determine whether plaintiff's penalty was excessive.

---

**10.** This example of patient abuse was contained in a decision issued by an Administrative Law Judge ("ALJ") of the Federal Labor Relations Authority ("FLRA"). After the Board recommended that plaintiff be discharged, but before the Secretary's final decision, plaintiff instituted an unfair labor practice action before the FLRA, claiming that he was wrongfully terminated. The ALJ held that he had no jurisdiction to hear plaintiff's claim because of the exclusive nature of § 4110, but nonetheless issued a twenty six page decision which documented penalties imposed on VACNY employees for allegations of patient abuse.

**11.** *See* note 10, supra.

In light of the evidence contained in the record which shows that plaintiff's penalty was the most severe possible, that the VA has a policy of treating like offenses with similar penalties, and that the Board did not consider the penalties it had imposed for similar offenses, the proper course is to remand this action to the Secretary for reconsideration of the penalty imposed on plaintiff. *NLRB v. Food Store Employees Union, Local 347*, 417 U.S. 1, 10, 94 S.Ct. 2074, 2080, 40 L.Ed.2d 612 (1974) [12].

## CONCLUSION

Defendants motion for summary judgment and plaintiff's cross-motion for summary judgment are denied in part and granted in part. The decision of the Secretary is vacated to the extent that it imposes a penalty of discharge, and remanded for reconsideration of a penalty consistent with this decision.

The Court retains jurisdiction.

IT IS SO ORDERED.

**12.** Given the remand, the merits of plaintiff's constitutional claims need not be reached.