# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

Nos. 98-11506 & 99-10489

GOLMAN-HAYDEN CO., INC.;
IDEAL SALES INC.,

Plaintiffs-Appellees,

MARTIN BROTHERS PRODUCE; ROGER'S
PRODUCE INC.; BEAR PRODUCE CO., INC.;
SOUTHMILL DISTRIBUTION INC. doing
business as Southmill Dallas,

Intervenor Plaintiffs-Appellees,

versus

FRESH SOURCE PRODUCE INC., ET AL,

Defendants,

EDWARD TOMANENG,

Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of Texas

July 17, 2000

Before POLITZ and DAVIS, Circuit Judges, and RESTANI,[*] Judge.

POLITZ, Circuit Judge:

---

[*]Judge of the United States Court of International Trade, sitting by designation.

Fresh Source Produce, Inc. and Edward Tomaneng appeal an adverse summary judgment and award of attorney's fees in a suit brought under the Perishable Agricultural Commodities Act (PACA).[1] For the reasons assigned, we affirm the summary judgment and reverse the award of attorney's fees.

## BACKGROUND

This action invoking PACA was filed on December 3, 1997. The original plaintiffs, Golman-Hayden Company, Inc. and Ideal Sales, Inc., sued Fresh Source Produce, Inc. and Edward Tomaneng, seeking amounts claimed due under the PACA trust provisions. Intervenors Martin Brothers Produce, Roger's Produce, Inc., Bear Produce Company, Inc., and Southmill Distribution, Inc. also filed complaints against Fresh Source and Tomaneng.[2]

Plaintiff-appellees are wholesale sellers of perishable agricultural commodities. They sold produce to Fresh Source, a dealer and commission merchant as defined in PACA. Fresh Source ceased doing business on November 21, 1997, and filed for protection under Chapter 7 of the Bankruptcy Code on April 3, 1998. Tomaneng is the sole shareholder and principal in Fresh Source.

The claims against Fresh Source and Tomaneng are based on the failure of

---

[1] 7 U.S.C. §§ 499a, *et seq.*

[2] The original and intervening plaintiffs are hereinafter referred to as "Appellees."

2

Fresh Source to make payments. Appellees alleged that they sold and delivered to Fresh Source produce collectively worth $271,527.70. If the funds from Fresh Source's remaining accounts receivable were disbursed on a pro-rata basis to Appellees, a shortfall of $134,582.60 would result.

Appellees moved for summary judgment, asserting that Tomaneng was the sole principal, owner, officer, and director of Fresh Source, and that he was in a position of total control over the dissipated trust assets. Because Fresh Source lacked sufficient assets to satisfy their PACA trust claims, Appellees claimed that Tomaneng was liable individually for breaching his fiduciary duty by failing to exercise the requisite control to preserve the trust assets.

The district court agreed and concluded that Tomaneng, as the sole shareholder of Fresh Source, was liable for breaching his duty to preserve trust assets. Specifically, he failed to exercise reasonable care to ensure proper management of the company. The court granted the motion for summary judgment and entered a final judgment in the amount of $134,582.60, representing the difference between the collective amount owed to Appellees and the amount being held in trust by Fresh Source for their benefit. The court subsequently awarded attorney's fees in the amount of $58,015.75. Tomaneng timely appealed both the

3

summary judgment and award of attorney's fees.[3]

## ANALYSIS

### I.  Summary Judgment

Summary judgment is appropriate when the case presents no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.[4] In determining whether summary judgment was appropriate we conduct a *de novo* review, judging the facts of record in the light most favorable to the non-movant.[5]

Tomaneng's personal liability under PACA is at the core of this dispute. PACA regulates the produce industry and promotes fair dealings in transactions involving fruits and vegetables.[6] Under the Act, when a seller, dealer, or supplier ships produce to a buyer, a statutory trust is created upon acceptance of the commodities. Once this trust comes into being, and the supplier's rights are properly preserved, the produce supplier obtains a priority interest in the trust assets

---

[3]The appeals from the summary judgment (No. 98-11506) and the award of attorney's fees (No. 99-10489) have been consolidated.

[4]Fed. R. Civ. P. 56(c); **City of Arlington v. FDIC**, 963 F.2d 79 (5th Cir.), *cert. denied sub nom*, 506 U.S. 1021 (1992).

[5]**Horton v. City of Houston**, 179 F.3d 188 (5th Cir.), *cert. denied*, ___ U.S. ___, 120 S.Ct. 530 (1999).

[6]**Wayne Cusimano, Inc. v. Block**, 692 F.2d 1025 (5th Cir. 1982).

held by the debtor.[7]

Recognizing an absence of controlling precedents in our circuit, the trial court relied on the holding of our Ninth Circuit colleagues in **Sunkist Growers, Inc. v. Fisher**[8] that "individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under the Act."[9] The trial court also observed that district courts in New York have held sole shareholders of a corporation secondarily liable for breach of a PACA trust.[10] Notably, the trial court *à quo* found persuasive the reasoning in **Shepard v. K.B.Fruit & Vegetable,**

---

[7]Bartholomew M. Botta, **Personal Liability for Corporate Debts: The Reach of the Perishable Agricultural Commodities Act Continues to Expand**, 2 Drake J. Agric. L. 339 (1997). 7 U.S.C. § 499e(c)(2) provides in part:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

[8]104 F.3d 280 (9th Cir. 1997).

[9]**Id.** at 283.

[10]**Bronia, Inc. v. Ho**, 873 F. Supp. 854 (S.D.N.Y. 1995) (sole shareholder, director, and president of corporation held personally liable for corporations breach of PACA trust); **Morris Okun, Inc. v. Harry Zimmerman, Inc.**, 814 F. Supp. 346 (S.D.N.Y. 1993) (sole shareholder who was in a position to control trust assets but failed to preserve them for beneficiaries breached a fiduciary duty and was held secondarily liable for unpaid produce).

**Inc.**,[11] wherein the court concluded that the liability determination of individual shareholders should be based on two factors: (1) whether the individuals' involvement with the corporation was sufficient to establish legal responsibility, and (2) whether the individuals, in failing to exercise any appreciable oversight of the corporation's management, breached a fiduciary duty owed to the PACA creditors.[12]

In granting summary judgment the district court found that Tomaneng was the sole shareholder of Fresh Source and that he was in a position to control the company's PACA trust assets. The court then concluded that he should be held secondarily liable for breaching his fiduciary duty to preserve those assets.

We have recognized that PACA is a "tough law".[13] In addition to protecting consumers, Congress expressly designed it to protect the producers of perishable agricultural products, most of whom must entrust their products to a buyer who may be thousands of miles away, and depend for their payment upon his business

---

[11]868 F. Supp. 703 (E.D. Pa. 1994).

[12]**Id.** at 706. Regarding the second factor, the **Shepard** court found that permitting the corporation's manager to operate the PACA-regulated business, which the individual shareholders established and for which they were legally responsible, apparently without oversight to ensure that PACA creditors were paid, was not reasonable under common law breach of trust principles.

[13]**Hawkins v. Agricultural Marketing Serv.**, 10 F.3d 1125, 1130 (5th Cir. 1993); **Cusimano**, 692 F.2d at 1028, n.2.

acumen and fair dealing.[14] An investor in a perishable commodities corporation "should know at the beginning of his association with such a corporation that he is 'buying into' a corporation which is strictly regulated by the federal government through PACA."[15]

PACA liability attaches first to the licensed commission merchant, dealer, or broker of perishable agricultural commodities.[16] If, however, the assets of the licensed commission merchant, dealer, or broker are insufficient to satisfy the PACA liability, then others may be held secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust.[17] Thus, we join our colleagues in the Ninth Circuit and hold that individual shareholders, officers, or directors of a corporation who are in a position to control trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under PACA.[18] We view this conclusion as consistent with the intent of Congress

---

[14]**Cusimano**, 692 F.2d at 1028, n.2.

[15]**Hawkins**, 10 F.3d at 1131.

[16]*See* **Sunkist**, 104 F.3d at 283 (quoting **Shepard**, 868 F. Supp. at 706).

[17]**Id.**

[18]While individuals generally are not held responsible for the liabilities of a corporation, we recognize that a corporation can act only through its agents and can fulfill fiduciary obligations only through its agents. *See* **Shepard**, 868 F. Supp. 705-06. Thus, our holding does not necessitate a piercing of the corporate veil. Rather, it is premised on the breach of one's fiduciary duty to protect PACA trust assets by an individual who is in a position to control such assets.

in establishing the statutory trust provisions of PACA.

It is undisputed that Tomaneng is the sole owner of Fresh Source. As the sole shareholder, he manifestly had absolute control of the corporation.[19] Although Tomaneng maintains that he was a passive shareholder, he may not escape liability based on a real or claimed failure to exercise his right and obligation to control the company. We conclude that his refusal or failure to exercise any appreciable oversight of the corporation's management was a breach of his fiduciary duty to preserve the trust assets. Our review of the record on appeal persuades that each of the Appellees preserved their trust rights under PACA.[20] Accordingly, the district court correctly found and concluded that Tomaneng was liable personally to the Appellees in the amount of $134,582.60.

## II.  Attorney's Fees

---

[19]PACA requires corporate licensees, such as Fresh Source, to list on the license all officers, directors, and holders of more than 10% of the corporation's stock. The record on appeal includes a certified copy of Fresh Source's license. Under the section for officers, directors, and holders of more than 10% of the corporation's stock, only one person is listed: Edward Tomaneng.

[20]A supplier preserves its trust rights by giving written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker within thirty days (i) after the expiration of payment due date; (ii) after expiration of such other time by which payment is due, as expressly agreed to by the parties in writing before entering the transaction; or (iii) after the time the supplier, seller, or agent has received notice that the instrument properly presented for payment has been dishonored. 7 U.S.C. § 499e(c)(3). Ordinary and usual billing or invoice statements may provide notice of intent to preserve the trust if they include the information required by § 499e(c)(3) and contain on the face of the statement certain language prescribed by the statute that puts the commission merchant, broker, or dealer on notice that the commodities are being sold subject to the PACA trust provisions. 7 U.S.C. § 499e(c)(4).

In **Alyeska Pipeline Service Co. v. Wilderness Society**,[21] the Supreme Court recognized the general rule that attorney's fees are granted only when specified in a statute. The Court, however, noted several exceptions allowing the award of attorney's fees where: (1) there was a willful violation of a court order; (2) a losing party acted in bad faith; or (3) a litigant created a common fund for the benefit of others.[22]

PACA does not provide for attorney's fees, but it does mandate that proceeds from the sale of perishable goods shall be held in trust for the unpaid suppliers. Based upon the statutory requirement that a commission merchant, dealer, or broker hold the proceeds in trust for the benefit of all unpaid suppliers, some courts have held that recognition of the PACA trust established a common fund from which attorney's fees may be recoverable.[23] Other courts, however, have denied the recovery of attorney's fees, concluding that the common fund exception does

---

[21]421 U.S. 240 (1975).

[22]**Id.** at 257-260.

[23]*See, e.g.,* **In re Milton Poulos, Inc.**, 947 F.2d 1351 (9th Cir. 1991) (holding that PACA trust fund was valid and enforceable under U.S.C. § 499e(c)(2) and should be used to pay attorney's fees under the common fund doctrine); **Fishgold v. OnBank & Trust Co.**, 43 F. Supp.2d 346 (W.D.N.Y. 1999) (same); **JC Produce, Inc. v. Paragon Steakhouse Restaurants, Inc.**, 70 F. Supp.2d 1119 (E.D. Cal. 1999) (holding that PACA trust created by the court under 7 U.S.C. § 499e(c)(2) should be used to pay attorney's fees because the statute does not preclude them); **In re Monterey House, Inc.**, 71 B.R. 244 (Bankr. S.D. Tex. 1986) (granting award of attorney's fees under PACA trust fund because the PACA statutory provision is similar to the Packers & Stockyard Act, which allows recovery of attorney's fees).

not apply to PACA.[24]  In awarding attorney's fees to Appellees, the district court relied on the common fund exception.

A common fund is a trust having multiple parties sharing an interest.[25]  A party may be entitled to attorney's fees from a common fund when acting to either protect the trust from destruction or to restore it to its purpose.[26]  The common fund doctrine typically applies in situations where the attorneys sue for an interest commonly held by members of a class or third parties who benefit from the suit.[27]

In the present case, several of Fresh Source's PACA creditors sued for a money judgment for their personal claims from the remaining accounts receivable of Fresh Source or from Tomaneng personally.  It does not appear that Appellees sued to create a PACA trust from which all potential PACA creditors could be compensated, as their complaints did not include a prayer for relief requesting the

---

[24]**Hereford Haven, Inc. v. Stevens**, No. Civ. A.3:98-CV-0575-P, 1999 WL 155707 (N.D. Tex. Mar. 12, 1999) (concluding that no attorney's fees should be awarded from a PACA trust because Congress contemplated attorney's fees for actions under 7 U.S.C. § 499g(c) but did not include them in 7 U.S.C. § 499e(c)(2)); **Valley Chips Sales, Inc. v. New Arts Tater Chip Co. L.L.C.**, No. 96-2351-JWL, 1996 WL 707028 (D. Kan. Oct. 10, 1996) (same); **In re Fair**, 134 B.R. 672 (Bankr. M.D. Fla. 1991) (same); **In re W.L. Bradley Co.**, 78 B.R. 92 (Bankr. E.D. Pa. 1987) (same). *See also* **In re Southland + Keystone**, 132 B.R. 632 (B.A.P. 9th Cir. 1991) (finding that Congress did not intend to award attorney's fees because the statute does not provide for it).

[25]**Trustees v. Greenough**, 105 U.S. 527 (1881); *see also* **Marre v. United States**, 117 F.3d 297 (5th Cir. 1997).

[26]**Greenough**, 105 U.S. at 533.

[27]**Marre**, 117 F.3d at 308, n.20.

preservation or creation of such a trust. Further, the district court's opinion does not reflect that it intended to create a common fund for the benefit of all unpaid PACA creditors. Because the litigation did not result in the establishment of a common fund, we must conclude that the district court erred in awarding attorney's fees to Appellees under the common fund exception. We express no opinion as to whether the common fund exception would permit the recovery of attorney's fees under PACA if a common fund was established. That decision remains for another day.

The judgment against Tomaneng in the amount of $134,581.60 is, accordingly, AFFIRMED. The award of attorney's fees is REVERSED.